YALE EXPRESS SYSTEM, INC. *v.* BROWN

[No. 406, September Term, 1963.]

486

Decided July 3, 1964.

The cause was argued before HENDERSON, HAMMOND, PRESCOTT, MARBURY and SYBERT, JJ.

*Hamilton O'Dunne* and *Sander L. Wise* for the appellant.

*Aaron Margolis* for the appellee.

SYBERT, J., delivered the opinion of the Court.

The appellant, Yale Express System, Inc., is a corporation engaged in the motor freight business in the eastern United States. In October, 1956, it hired the appellee, Norman Brown, as a terminal manager in Baltimore. At the time of his employment a salary was agreed upon and Brown was informed that Yale offered certain benefits to employees in his class, including two weeks vacation each year and a bonus based on length of service and position held.

Brown remained with Yale until the end of 1961. In either October or December of that year, Norman Rovine, Yale's southern regional manager, had a discussion with Brown concerning termination of his employment. In substance, Brown testified that in October, 1961, Rovine told him that Yale intended to terminate his services, but that Rovine wanted him to remain until the end of the year, and that if he did, he would be paid all benefits to which he was entitled, including termination pay, vacation pay (salary in lieu of a vacation which the appellee had not taken), and the customary annual bonus. On the other hand, Rovine testified that he had discussed va-

cation pay and a bonus with Brown around the first of December, but denied having promised that Yale would pay those items, and contended that he only informed Brown that he "would do everything possible to help him get everything that was coming to him". It was undisputed that Brown's employment ceased on December 29, 1961.

On July 13, 1962, alleging that he had not received vacation pay or a bonus as promised, Brown filed a two-count declaration against Yale in which he sought to recover, in the first count, $400.00 as two weeks salary in lieu of a vacation, and, in the second count, $1,000.00 as a bonus allegedly due for the year 1961. The case was tried before a jury, which returned a verdict in favor of Brown for $400.00 under the first count and $1,000.00 under the second count. After motions for judgment *n.o.v.* and for a new trial were denied, a separate judgment was entered for Brown on each count, and Yale appeals from both.

The only questions raised by Yale here concern instructions to the jury and the sufficiency of the evidence. In a rather broad attack, Yale contends there was no evidence to justify the trial court's instruction that the jury could find that Rovine had actual or apparent authority to bind it by representing to Brown that he would receive two weeks pay in lieu of a vacation, or a bonus for 1961. We think there was ample evidence of real or apparent authority to warrant the instruction. When asked if the extent of his authority to deal with Brown included "agreeing to provide him with the benefits which he thought he was entitled to", Rovine replied, "Yes, it did." More significantly, in an answer to interrogatories, placed in evidence below, Yale stated, "the only person having authority to act on behalf of the Defendant with respect to the Plaintiff's employment and arrangements for the termination thereof was Norman Rovine." Thus we find no error in the instruction to the jury that they could find that Rovine had real or apparent authority to bind Yale, if they found that he promised as alleged.

Yale also argues that the trial court improperly instructed the jury that they could find for Brown if they found that Rovine promised that Yale would pay monies in lieu of a vacation, or a bonus, with no intention of carrying out such prom-

ises, for the purpose of misleading Brown. The only exception to this instruction properly before us, Maryland Rule 554 e, is Yale's claim that there was no evidence from which the jury could find that Rovine "had no intention of carrying out the promises at the time he made them if, in fact, they were made", and no evidence of an intention to mislead Brown. However, there was ample evidence from which the jury could find that Rovine, if he in fact made the promises alleged, had no intention of carrying them out, and that he intended thereby to mislead Brown so that he would stay on the job until the end of the year. Rovine's own testimony was sufficient to permit such a finding, since he admitted that he knew on the first of December that Brown would not receive pay in lieu of his vacation, or a bonus, but instead of informing him when inquiry was made, Rovine admitted that he told Brown he would do everything he could to help him receive the benefits under discussion.

It is further contended by Yale that the trial judge committed reversible error when he instructed the jury that they could find that Yale had undertaken to pay Brown a bonus for the year 1961, without qualifying such instruction by conditioning recovery on the additional finding that Brown's performance as an employee was satisfactory. However, only performance subsequent to Rovine's promise to pay the bonus could be considered as having an effect on the obligation to pay. If the promise to pay was in fact made, prior performance would have been immaterial. There was no evidence, and Yale did not contend, that Brown had not properly performed his duties after the time of the alleged promises. In fact, Rovine admitted that Brown had performed satisfactorily after their discussion regarding the termination of his employment. Thus, the failure to qualify the instruction in the manner suggested by Yale, was not error, there being no allegations or evidence to justify such qualification.

To complete its attack upon the instructions, Yale maintains that the trial court erred prejudicially when it told the jury that they could award such amount as a bonus as a reasonable man would expect to receive if no discharge had occurred.

Yale's counsel excepted to this instruction, stating, "I think that should be qualified by a reasonable man knowing all of the facts and circumstances which influence the amount of bonus, that is to say, the number of people to whom bonuses are paid, [and] the factors which determine how much each employee gets paid * * *." We do not think this exception was well taken. Reading the charge as a whole, we find that the trial judge told the jury that the amount they could fix as a bonus must be compensatory, not punitive, and stated that they should consider "all of the evidence including the fact of the bonuses actually received by this defendant heretofore, the bonuses actually received by other employees during the year, 1961, in question", and "all of the evidence in the case", in determining what "a reasonable person would be expected to believe would have been granted to this particular employee." Included in "all the evidence" was ample testimony of the circumstances and factors which determined the amounts received as bonuses by Yale's employees. Thus, in effect, the trial court instructed the jury in the manner desired by the appellant. Cf. *Shafer v. Bull*, 233 Md. 68, 76, 194 A. 2d 788 (1963).

The remaining contentions relate to the sufficiency of the evidence. Yale claims there was no legally sufficient evidence to support the jury's finding that Brown was entitled to two weeks pay in lieu of a vacation, or a bonus for the year 1961. It has long been recognized that in determining the sufficiency of the evidence to support a plaintiff's right of recovery, the court resolves all conflicts in the testimony in favor of the plaintiff, and assumes the truth of all evidence and such inferences as may naturally and legitimately be deduced therefrom. *Miller v. Palmer*, 58 Md. 451 (1882); *Richardson v. Scott*, 232 Md. 490, 494, 194 A. 2d 288 (1963). In the present case, our review of the record convinces us that the evidence and inferences reasonably to be drawn therefrom, were sufficient to permit the jury to find that Rovine, acting within the scope of his real or apparent authority, had promised as alleged, and, since the promises were not fulfilled, that Brown was entitled to receive two weeks' pay in lieu of a vacation, and a bonus for 1961.

As a secondary argument, Yale asserts there was no legally

sufficient evidence from which the jury could fix the amount of the bonus, even if it found Brown entitled to one. However, there was evidence regarding the major considerations which determined the amounts Yale would pay as bonuses, such as the length of service; the company's expressed philosophy in paying bonuses, that "it should be no less but preferably more than the previous year"; the amounts of the prior annual bonuses paid to Brown; the bonuses paid to other terminal managers in 1961; and the amount which Yale had placed in reserve for the payment of bonuses in 1961. We believe that this evidence was sufficient to take the question of the amount of the bonus out of the realm of conjecture and sheer speculation, and to provide the jury with a sufficient basis to fix the amount of the bonus to which the appellee was entitled. Cf. *Evergreen Amust. Corp. v. Milstead,* 206 Md. 610, 618-621, 112 A. 2d 901 (1955).

Since we find no error, the judgments appealed from will be affirmed.

*Judgments affirmed; appellant to pay the costs.*